# EXHIBIT 1

**Zoey Kotzambasis**

---

| | |
|---|---|
| **From:** | Patricia V. Waterkotte |
| **Sent:** | Wednesday, November 6, 2024 5:52 PM |
| **To:** | Michelle L. Hogan; Corrinne R. Viola |
| **Cc:** | Zoey Kotzambasis; Joan Harris |
| **Subject:** | RE: Bullock |

Hi Michelle,
Thank you for your message, have been in depositions (and will be again tomorrow AM). However, I have been working with the UA evaluating the order and a path forward and two obvious issues have come up. Banner terminated her. She must be a Banner employee to be in the program. UA cannot compel Banner to hire her (or any other employee) and she didn't request an order as to Banner. Not sure if Banner will ultimately re-hire her, and that process is independent from UA. Second, she no longer has a medical training license. She likewise must have that to be reinstated in the program. She must reapply for that and it could take weeks (if not longer) to obtain it and it's up to the Medical Board to decide her license reinstatement at that time. UA is still evaluating these clear impediments and will update you tomorrow. Or if you have any additional information on these issues please let me know.  If we can't work through these we will file something with the Court tomorrow to bring this to the Court's attention.
Thanks,
Patricia

**From:** Michelle L. Hogan <MLH@jaburgwilk.com>
**Sent:** Tuesday, November 5, 2024 4:41 PM
**To:** Patricia V. Waterkotte <pwaterkotte@rllaz.com>; Corrinne R. Viola <CRV@jaburgwilk.com>
**Cc:** Zoey Kotzambasis <ZKotzambasis@rllaz.com>; Joan Harris <jharris@rllaz.com>
**Subject:** RE: Bullock

Attached  is the order.



**Michelle L. Hogan**
Partner | Jaburg Wilk
 602.248.1072 |  MLH@jaburgwilk.com

**From:** Patricia V. Waterkotte <pwaterkotte@rllaz.com>
**Sent:** Monday, November 4, 2024 4:45 PM
**To:** Michelle L. Hogan <MLH@jaburgwilk.com>; Corrinne R. Viola <CRV@jaburgwilk.com>
**Cc:** Zoey Kotzambasis <ZKotzambasis@rllaz.com>; Joan Harris <jharris@rllaz.com>
**Subject:** Bullock

Hello Michelle,
Following up on a voicemail that I left this afternoon. My firm has been retained to represent the defendants in the federal action filed by Brenna Bullock MD. Please direct the waiver of service forms to me for signature. Please also direct future communications about this matter to my office.
Thank you,
Patricia

Patricia Victory Waterkotte, Esq.
Rusing Lopez & Lizardi, PLLC

1

6363 North Swan Road, Suite 151
Tucson, Arizona  85718
Tel: 520.792.4800
Fax: 520.529.4262
pvictory@rllaz.com
www.rllaz.com



CONFIDENTIALITY NOTICE - THIS ELECTRONIC MAIL TRANSMISSION AND ANY DOCUMENTS ACCOMPANYING IT CONTAIN CONFIDENTIAL OR PRIVILEGED INFORMATION BELONGING TO THE SENDER. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISCLOSURE, COPYING, DISTRIBUTION OR USE OF THIS COMMUNICATION OR ANY OF THE INFORMATION IT CONTAINS IS STRICTLY PROHIBITED.  ANY UNAUTHORIZED INTERCEPTION OF THIS TRANSMISSION IS ILLEGAL.  IF YOU RECEIVED THIS MESSAGE ERRONEOUSLY, PLEASE IMMEDIATELY DELETE THIS COMMUNICATION AND ANY ATTACHMENTS FROM YOUR SYSTEM AND DESTROY ANY COPIES.  PLEASE ALSO NOTIFY THE SENDER THAT YOU HAVE DONE SO BY REPLYING TO THIS MESSAGE. THANK YOU.

# EXHIBIT 2

**Rusing Lopez & Lizardi, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
pwaterkotte@rllaz.com
zkotzambasis@rllaz.com

Patricia V. Waterkotte
State Bar No. 029231
Zoey Kotzambasis
State Bar No. 034607

*Attorneys for Defendants Arizona Board of Regents;*
*Todd Altenbernd, M.D.;*
*and Conrad Clemens, M.D.*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Brenna Bullock, M.D., | NO. 4:24-cv-00520-SHR |
| Plaintiff, | **DECLARATION OF CONRAD CLEMENS, M.D. IN SUPPORT OF MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER** |
| vs. | |
| Arizona Board of Regents, the funding body for the University of Arizona, a constitutionally created body; Todd Altenbernd, M.D., individually; Jonathan Holmes, M.D., individually; and Conrad Clemens, M.D., individually, | (Assigned to Hon. Scott H. Rash) |
| Defendants. | |

I, CONRAD CLEMENS, M.D., under penalty of perjury hereby state:

1.     I am over the age of 18, have personal knowledge of, and am competent to testify to the matters set forth in this Declaration.

**Rusing Lopez & Lizardi, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

2.      I am the Designated Institutional Official ("DIO") for Graduate Medical Education ("GME") at the University of Arizona ("UA").

3.      My duties as the GME DIO include collaborating with the Graduate Medical Education Committee to ensure the UA College of Medicine and its programs comply with the applicable requirements of the Accreditation Council for Graduate Medical Education ("ACGME").

4.      As the DIO, I am familiar with and oversee the various accreditation, licensing, and other program requirements of the UA College of Medicine's Ophthalmology Residency Program (the "Program").

5.      Brenna Bullock, M.D., was dismissed from the Program on September 9, 2024. A screenshot of her ACGME record reflects her dismissal as of September 9, 2024. *See* Exhibit A (screenshot); Exhibit B (Sept. 9, 2024 Dismissal Letter).

6.      I have reviewed the November 5, 2024 TRO entered requiring that Bullock be immediately reinstated in the Program and have looked into how, if at all, this can be immediately accomplished. However, it is not possible for Bullock to be immediately reinstated because she was terminated by Banner-University Medical Group ("Banner"), *see* Exhibit C (Banner Personnel Action Form), and has no medical license—both requirements to be admitted back into the Program.

7.      The UA College of Medicine requires all Trainees (also known as residents) who participate in GME programs at the UA to be employed by Banner because Banner is UA's exclusive academic partner. *See* Exhibit D, relevant portions of the UA College of Medicine House Staff Manual at 4. If a Trainee's participation in a GME program, including the Program here, ends for any reason, the Trainee's employment contract with Banner also terminates.

8.      On May 31, 2023, Bullock entered a Graduate Medical Education

2

Rusing Lopez & Lizardi, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, Arizona  85718
Telephone: (520) 792-4800

Resident/Fellow Employment Agreement with Banner for the July 1, 2023–June 30, 2024 academic year. *See* Exhibit E. This is the most recent employment contract between Bullock and Banner.

9.      Banner is an independent entity, separate from the UA College of Medicine, and it is not under my control or the control of ABOR, the UA, the UA College of Medicine, or any named Defendant in this action.

10.      Banner makes its own independent decisions about terminating residents from employment with Banner in its hospitals. Banner has previously initiated the termination of a resident's contract before the resident was recommended for dismissal by the UA College of Medicine.

11.      Neither the UA College of Medicine, ABOR, nor any of the named Defendants in this action have the authority to compel Banner to offer Bullock (or any of Banner's other employees) a new employment contract.

12.      Bullock cannot participate in the required clinical rotations at Banner without having an employment contract with Banner.

13.      The other reason that Bullock's immediate reinstatement to the Program is impossible is that Bullock is not licensed to practice medicine.

14.      Bullock's training license expired on June 30, 2024. She does not have any independent Arizona medical license. She did not renew her license.

15.      The Arizona Medical Board oversees medical licensing in Arizona, including the issuance of Postgraduate Training Permits. The Arizona Medical Board is an independent entity over which none of the Defendants named in this action have authority or control.

16.      Without a medical license and an employment contract with Banner, Bullock cannot be reinstated in the Program, and cannot treat patients and participate in clinical rotations, which is a necessary part of the Program.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

17.    Defendants cannot readmit Bullock to the Program without violating ACGME's accreditation requirements that a resident have a medical license prior to participating in the Program.

/ / /

/ / /

Rusing Lopez & Lizardi, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this ___6th___ day of November, 2024 in Tucson, Arizona.


CONRAD CLEMENS, M.D.

Rusing Lopez & Lizardi, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, Arizona  85718
Telephone: (520) 792-4800

# EXHIBIT A



## 2400321171 - UNIVERSITY OF ARIZONA COLLEGE OF MEDICINE-TUCSON PROGRAM

Ophthalmology - Tucson, AZ

Verification of Graduate Medical Education Training (VGMET)    ⌄

Case Log Information    ⌄

| 2024 - 2025 ⌄ | | | | | | **+ Add Resident** |
|---|---|---|---|---|---|---|

| Left Program [1] ⌄ | | | | | | **🖶 Print** |
|---|---|---|---|---|---|---|

| | | | | | Filter Results | |
|---|---|---|---|---|---|---|

| Last, First Name ⌄ | Year in Program ⌄ | Status ⌄ | Start ⌄ | End ⌄ | | |
|---|---|---|---|---|---|---|
| Bullock, Brenna<br>See Details | 3 | Dismissed | 7/1/2021 | 9/9/2024 | **Case Log Archived** | |

# EXHIBIT B



THE UNIVERSITY OF ARIZONA
COLLEGE OF MEDICINE TUCSON
**Graduate Medical**
**Education**

1501 N. Campbell Avenue, Rm 2445
P.O. Box 245085
Tucson, AZ  85724-5085
Tel: (520) 626-7878
Tel: (520) 626-6858
Fax: (520) 626-0090
www.gme.medicine.arizona.edu

September 9, 2024

Brenna Bullock, MD

bbullock@arizona.edu

Re: Decision to Rescind Offer of Probation and Dismiss

Dear Dr. Bullock,

On August 12, 2024, you received the Decision on Appeal to DIO regarding the appeal of your dismissal from the Ophthalmology Residency Program (the "Program").  Your appeal expressly requested that your dismissal be modified to a "six-month Performance Improvement Plan or a Probation" to allow you additional time to remediate the deficient milestones that formed the basis for your dismissal. (See Appeal of Disciplinary Action to Designated Institutional Official, 07/12/24).

I granted your request and reversed and modified your dismissal from the Program with this directive, "You will be placed on probation for a period of six months. Your Program Director will outline the parameters of the probation and the expectations of professional conduct in a separate document." (See Decision on Appeal, 08/12/24).

The parameters of your probation were shared with you on August 26, 2024, ("Probation Parameters"). Your Program Director met with you shortly thereafter to discuss your return to clinical rotations beginning September 1, 2024.

After receiving the final Probation Parameters, you sent numerous emails rejecting the probation, arguing that you should not receive any disciplinary action, and requesting significant modifications to the requirements of the Program itself (e.g., waiving your PGY3 call requirements, lowering milestones, and promoting you to a PGY4 despite not completing PGY3).

Specifically:

- On August 28, you emailed me and stated "I am unable to accept the proposed terms," and requested numerous modifications to the final Probation Parameters letter, including that it ultimately be removed from your file as "unjustified."

- On August 29, you emailed your Program Director that you were still "negotiating" the terms of your probation.

- I sent a response to your August 28 email that included this express statement, "I want to be clear that the Probation Parameters you received on August 26 are final and will

remain in your GME file. You are expected to return to clinical duties on September 1."

- On August 29, you emailed me and stated that you could not work with your Program Director and again disputed the Probation Parameters. I provided you with the opportunity to provide more information about why you could not work with your Program Director.[1]

- On September 5, before responding to my request for more information, you again challenged the decision to place you on probation, stating "why is it absolutely necessary to place me directly on probation?" Your further diminish the documented concerns by stating, "[t]he 4 milestone deficiencies will not impact my ability to perform my clinical duties," and arguing these deficiencies "make no difference in terms of probation."

Your Program Director dismissed you from your Program for significant deficiencies in the following milestones: (1) Reflective Practice and Commitment to Personal Growth; (2) Behavior and Ethics; (3) Self-Awareness and Help Seeking; and (4) Interprofessional and Team Communications. When you appealed your dismissal, you requested a six-month probation period that would allow you to address and remediate these deficiencies. However, your subsequent communications clearly reject the opportunity to remain in the Program subject to a probationary period.

Your behavior and communications over the past several weeks confirm your severe deficiencies in these milestones. You have repeatedly rejected the terms of the very probation that you requested. Because you refuse to accept probation and the necessary remediation, I am rescinding my August 12, 2024 decision to modify the disciplinary action of dismissal to a six-month probation.

For the reasons stated above, effective immediately, I uphold the June 25, 2024 decision to dismiss you from the Ophthalmology Residency Program.

This decision is final and is not subject to further review within the University.

Sincerely,

Conrad Clemens, M.D., MPH
Designated Institutional Officer, Graduate Medical Education
University of Arizona College of Medicine - Tucson

cc:

Todd Altenbernd
Laura Vitali

---

[1] You raised serious concerns about your work environment and interactions with your Program Director and Chair. I provided you an opportunity to share additional information, which you did. I reviewed the information you provided and separately responded with my evaluation of those concerns.

# EXHIBIT C

**MyHR | workday**

v1.0

# Personnel Action Form

Form to be completed only by Manager or HR

**This form is only required for the following exceptions:**

• Corrections to actions processed in MyHR|Workday
• Leader unable to process action in MyHR|Workday
• Add/change/delete Salary Splits
  • Salary splits can only occur on Exempt team members
  • Total percentage must equal 100%
  • In the Comment section, please provide the AU and cost center for each: For example 439_8473116 - 60%, 439_8473117 - 40%

| Employee ID | Last Name, First Name | (Start of pay period) Effective Date | Select One |
|---|---|---|---|
| ▮▮▮ | Bullock, Brenna | Fri 9/27/2024 | ☑ Change   ☐ Correction |

| Why are you making this change or correction? | | *Select value* |
|---|---|---|

**Comments** | Please term Brenna Bullock in the system effective today 9/27/2024. Leader is unavailable to process. Discharge code is: Involuntary - Poor performance discharge

## Complete information that is changing:

| | | |
|---|---|---|
| Who is the new manager? | | |
| New Manager's Supervisory Org Title | | |
| Employee's Physical Work Location Name | | *Facility name* |
| Employee's Physical Work Location Address | | *Facility address* |
| What do you want to do with the position? | | *Select value; 'Close Position' cannot be undone* |
| Position Title | | |
| Job Profile Number (Job Code) | | *Search for "Find Job Description" in MyHR|Workday* |
| Scheduled Weekly Hours | | *Determines FTE value* |
| Work Shift | | *Select value* |
| Employee Type | | *Select value* |
| Company | | *Select value* |
| Cost Center | | *I.E. 101_1234567* |
| Current Hourly Pay Rate | | |
| New Hourly Pay Rate | | *Requires Compensation Approval* |

**Manager/HR Authorization: Send form via email to HRTransactionSupport@bannerhealth.com**

Signature acknowledges my review and that this transfer complies with Banner's Employee Transfer and Compensation Policies.

| | Signatures | Emp ID | Date |
|---|---|---|---|
| **Manager** | | | |
| **Compensation** | | | |
| **Human Resources** | Amber Campos | ▮▮▮ | 09/27/24 |

**EXHIBIT D**



College of Medicine

**HOUSE STAFF MANUAL**

Revised: October 2024

# Contents

Introduction ........................................................................................................................... 4

Certificate of Completion ...................................................................................................... 5

Clinical and Educational Work Hours .................................................................................. 5

Due Process Guidelines – Addressing Conduct and Performance Concerns ........................ 5

Evaluation of Trainee ............................................................................................................ 5

Fingerprint Clearance Cards .................................................................................................. 6

Grievance Process .................................................................................................................. 6

Housestaff Counselors ........................................................................................................... 6

Interactions Between Vendors, Trainees and Programs ........................................................ 7

International Medical Graduates and Visas ........................................................................... 7

International Travel for Rotations and Conferences .............................................................. 7

Trainee Job Description .......................................................................................................... 7

Licensing ................................................................................................................................ 8

Malpractice (Professional Liability Coverage) ..................................................................... 8

Meal Cards ............................................................................................................................. 8

Moonlighting .......................................................................................................................... 8

Non-Competition .................................................................................................................... 9

Nondiscrimination and Anti-harassment ............................................................................... 9

On-Call Rooms ...................................................................................................................... 9

Paycheck ................................................................................................................................. 9

Promotion and Renewal of Trainee Appointment ............................................................... 10

Records Retention ................................................................................................................ 10

Recruitment, Selection, Eligibility, and Appointment ........................................................ 10

Security ID Badges .............................................................................................................. 10

Subpoenas ............................................................................................................................ 10

Substantial Disruptions in Patient Care or Education ......................................................... 11

Supervision .......................................................................................................................... 11

Title 38 USC 3679 (e) ......................................................................................................... 11

Trainee Transfers ................................................................................................................. 11

Vacation and Leaves of Absence ........................................................................................ 12

Workplace Accommodations ............................................................................................... 12

    Religious Accommodations ............................................................................................ 12

    Disability Accommodations ........................................................................................... 12

Section II: Addressing Conduct and Performance Concerns ............................................... 13

    Procedures for Disciplinary and Non-Disciplinary Action ........................................... 13

    Overview ......................................................................................................................... 13

    Impairment ...................................................................................................................... 18

Drug and Alcohol Testing Policy ............................................................................................................ 18

Administrative Leave Procedure ............................................................................................................ 20

Suspension ............................................................................................................................................ 20

Revocation of Medical License ............................................................................................................. 21

**Introduction**

The University of Arizona College of Medicine– Tucson (UA COM-T) and is the sponsoring institution for the graduate medical education (GME) programs in Tucson.

Throughout this manual, the term "Trainee" collectively refers to interns, residents, fellows and non-standard Trainees participating in an accredited or non-standard internship, residency, or fellowship program. The term "Trainee" does not include medical students, junior faculty, research fellows, or other participants in non-accredited Training Programs. The term "Training Program" refers to the applicable internship, residency, fellowship or non-standard training (NST) program.

All Trainees who participate in GME Training Programs at the UA COM-T are employed by Banner – University Medical Group ("B—UMG"). Per the B—UMG Graduate Medical Education Resident/Fellow Employment Agreement, if a Trainee's program participation ends for any reason, the Trainee's B-UMG employment contract will also terminate.

This manual sets forth the duties, responsibilities, rights, and privileges for Trainees. It is divided into three sections: the first section provides information that is unique to Trainees; the second section addresses conduct and performance concerns, including the due process guidelines for non-disciplinary and disciplinary action; and the third section includes links to UA COM-T GMEC and Banner Health policies that are applicable to all Trainees.

The Accreditation Council for Graduate Medical Education (ACGME) specialty Training Program requirements set forth basic expectations for supervising faculty. Individual Training Programs further specify expectations for faculty supervision, behavior, and communication. Faculty or Trainees with specific questions about these expectations are referred to the ACGME or the Training Program's director.

This manual is offered for informational purposes and is not intended to create an express or implied contract. This manual may be modified at any time at the discretion of UA COM-T.

4

## Licensing

All Trainees are required to maintain an Arizona Post Graduate Training Permit or Arizona Independent License for the duration of their Training Program.

The GME Office pays the AZ Post Graduate Training Permit fee for Trainees each academic year.

Trainees are responsible for all costs related to AZ Independent Licenses.

Any gaps in renewal or licensing coverage of AZ Independent Licenses may result in extension of training or disciplinary action.

## Malpractice (Professional Liability Coverage)

B-UMG provides professional liability coverage for all Trainees. Such coverage extends to professional acts occurring in the course of the Trainee's responsibilities in the Training Program.

Professional liability insurance provides coverage on a claim made policy form and includes unlimited extended claims reporting coverage (tail coverage). This insurance does not cover the Trainee for any activities performed outside the scope of Training Program responsibilities. (e.g. "External Moonlighting").

A Trainee must:
- Contact Banner Health's Risk Management Department as well as the Program Director whenever the Trainee becomes aware of an event that may lead to a claim.  The general phone number for Risk Management is (602) 747-4750.
- Contact Banner Health Legal Department (Candace McClue) at (602) 747-4507 or candace.mcclue@bannerhealth.com if a Trainee receives a subpoena or a request for an interview for a matter in which the Trainee nor Banner is *not* a named defendant.
- Contact Banner Health's Risk Management Department and the Program Director immediately if the Trainee receives a claim or lawsuit, or a subpoena for a matter in which the Trainee or Banner *is* a named defendant.
  - BUMC-T:  Contact Josephine ("Yvette") Carrillo at (520) 874-7211 or Josephine.Carrillo@bannerhealth.com

## Meal Cards

Trainees will receive a meal card with $970.00 pre-loaded. There is a $10 fee if a meal card is lost or destroyed. Meal card funds are renewed at the beginning of each academic year.  Any unused funds from the previous academic year will be forfeited.

## Moonlighting

The UA COM-T GMEC and individual programs, set forth policies to outline the policies and procedures for moonlighting.  Trainees planning on or engaged in moonlighting must contact their program for the most up to date policies.

8

**EXHIBIT E**

GRADUATE MEDICAL EDUCATION
RESIDENT/FELLOW EMPLOYMENT AGREEMENT

This Graduate Medical Education Resident/Fellow Employment Agreement (this "Agreement") is made and entered into as of the signature dates set forth below, to be effective as of 07/01/2023 (the "Effective Date"), between Banner—University Medical Group, an Arizona non-profit corporation ("B—UMG"), and Brenna Bullock, MD**,** a physician in training as a resident or fellow ("Resident/Fellow").

RECITALS:

A.    The parties desire to enter into an agreement whereby B—UMG employs Resident/Fellow as a resident or fellow in the University of Arizona College of Medicine - Ophthalmology Graduate Medical Education Program ("GME Program") sponsored by the University of Arizona College of Medicine - **Tucson Campus** ("UACOM").

B.    UACOM is the Accreditation Council for Graduate Medical Education ("ACGME") designated sponsoring institution of the GME Program in which Resident/Fellow is participating and is responsible for sponsoring, operating, and administering the GME Program in accordance with the requirements and standards of the ACGME, the National Residency Match Program ("NRMP") and other applicable accrediting agencies.

C.    This Agreement sets forth the terms, conditions, obligations, and expectations of the parties in connection with the educational experience provided to Resident/Fellow through the GME Program as an employee of B—UMG.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

1.    <u>Employment</u>.  Subject to the terms and conditions set forth in this Agreement, Resident/Fellow hereby accepts employment by B—UMG as a resident or fellow on a full-time basis as part of the GME Program.

2.    <u>Financial and Other Arrangements</u>.

    2.1    For each period beginning on July 1 and ending on June 30 (an "Academic Year"), Resident/Fellow will be paid an annual salary equal to the amount approved by the Academic Management Council for the program year ("PGY") level that is applicable to Resident/Fellow during such Academic Year, which approved amounts will be posted at https://bycell.mobi/wap/index.jsp?name=BUMDHR, or at such other location as may be identified by B—UMG in writing.  All compensation is payable in equal installments every two weeks and is subject to deductions for federal and state income withholdings and any other deductions required by law or authorized in writing by Resident/Fellow.

2.2    If approval is given for the provision of additional services within the GME Program and/or for the provision of moonlighting services outside of the GME Program on behalf of B—UMG or any B—UMG affiliate, Resident/Fellow will receive bonus compensation from B—UMG for such moonlighting services.

2.3    In the event of a reduction, limitation, or termination of the GME Program, B—UMG and UACOM will assist Resident/Fellow in securing a position in another ACGME approved program to complete training.

2.4    Upon satisfactory completion of the GME Program by Resident/Fellow, Resident/Fellow will receive a certificate of completion of training.

3.    <u>Resident/Fellow Qualifications.</u>

3.1    As a condition of entering this Agreement, and as a prerequisite to begin training and to receive financial support and benefits pursuant to this Agreement, Resident/Fellow agrees as follows:

3.1.1    Resident/Fellow must meet and fulfill the requirements set out in the Resident/Fellow GME House Staff Manual (the "Manual"), a copy of which has been made available to Resident/Fellow.

3.1.2    Resident/Fellow must complete the process necessary to obtain clearance for duty from Banner Health Occupational Health, including, but not limited to, passing a drug screening, satisfying B—UMG vaccination/immunization requirements (unless Resident/Fellow has been granted a medical or religious exemption), and participating in all post-offer medical examinations required for all residents and fellows in the GME Program.

3.1.3    Resident/Fellow must satisfactorily complete B—UMG pre-employment drug and substance use screening tests.

3.1.4    Resident/Fellow must satisfactorily complete B—UMG pre-employment background screening, including fingerprint clearance card, reference checks, criminal history check, and other B—UMG background checks.

3.1.5    Resident/Fellow must be accepted to the GME Program.

3.1.6    Resident/Fellow must satisfactorily meet the qualifications and requirements of the GME Program, the ACGME, the NRMP and other applicable accrediting agencies, as may be amended from time to time.

3.2    In the event that Resident/Fellow has not met eligibility requirements as of the Effective Date, this Agreement will become null and void and Resident/Fellow

will coordinate with B—UMG and UACOM regarding further participation in the GME Program.

3.3    Resident/Fellow hereby permits and authorizes B—UMG to release and provide to UACOM, including third-party training sites that are a part of the GME Program, and to accrediting and certifying boards and organizations any requested and required information related to participating in the GME Program, including, but not limited to, social security number, fingerprint clearance card and immunization records.  Resident/Fellow will provide the director of the GME Program (the "Program Director") with written notification of any change in status relating to the above qualifications and prerequisites.

4.    <u>Obligations and Responsibilities of Resident/Fellow</u>.

4.1    Resident/Fellow agrees to abide by the Manual, as may be amended from time to time.  The Manual includes, but is not limited to, information, policies, and procedures related to the following:

4.1.1    Terms, conditions, and procedures for evaluation, reappointment, and promotion to a subsequent PGY level;

4.1.2    Policies, standards, and procedures related to due process, grievances, and disciplinary action;

4.1.3    Professional liability insurance coverage provided through B—UMG;

4.1.4    Hospital and health insurance benefits for Resident/Fellow and eligible dependents;

4.1.5    Vacation, parental, caregiver, sick, and other leave benefits;

4.1.6    Other insurance benefits;

4.1.7    The effect of leaves on ability to satisfy requirements for GME Program completion;

4.1.8    Information related to eligibility for specialty board examinations; and

4.1.9    Policies and procedures relating to non-discrimination and anti-harassment.

4.2    Resident/Fellow will devote the time and effort necessary to satisfactorily fulfill the educational requirements, and to perform required services, duties, functions, and responsibilities, of the GME Program as established by UACOM.

4.3    Resident/Fellow will comply with all state, federal, and local laws, rules, regulations, and standards as well as applicable standards, requirements, policies and procedures of the GME Program, B—UMG and UACOM, as may be

amended from time to time including, without limitation, policies and procedures regarding duty hours and moonlighting. Resident/Fellow will also comply with the Banner Code of Conduct and with all policies and procedures of Banner Health and of the facility where Resident/Fellow is providing care. Resident/Fellow will comply with the standards for privacy of individually identifiable health information and the security standards for the protection of electronic protected health information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended, together with its implementing regulations promulgated under HIPAA and the Health Information Technology for Economic and Clinical Health Act by the United States Department of Health and Human Services.

4.4    Resident/Fellow will notify the Program Director immediately (a) of any alleged or actual act or omission that may be a violation of any law, rule, regulation, standard, requirement, or any Manual provision, or (b) if Resident/Fellow is a party to any disciplinary proceedings or malpractice claims, regardless of whether they are related to services provided at the assigned GME Program location. Resident/Fellow will also notify the Program Director immediately if Resident/Fellow becomes aware of any legal claim made against Resident/Fellow.

4.5    Resident/Fellow will notify the Program Director immediately if Resident/Fellow becomes aware of any circumstance that may cause B—UMG, UACOM, or any participating hospital or healthcare facility site to be noncompliant with any federal, state, or local laws, rules, or regulations or the standards of any accrediting or licensing body to which it is subject.

5.    <u>Term and Termination</u>.

5.1    Subject to either party's right of termination and B—UMG's right of extension as set forth below, the term of this Agreement will commence on the Effective Date and continue until the date of completion of the GME Program by Resident/Fellow (the "Termination Date"). Except as set forth in <u>Section 5.2</u> below, this Agreement will expire on the Termination Date.

5.2    In the event Resident/Fellow enters into an employment agreement with B—UMG or a B—UMG affiliate during the term of this Agreement (the "Subsequent Employment Agreement"), the term of this Agreement will automatically be extended until the earliest of the following dates (the "Extended Termination Date"): (a) the date on which Resident/Fellow commences active employment with B—UMG or the B—UMG affiliate under the terms of the Subsequent Employment Agreement; (b) the date on which the Subsequent Employment Agreement is terminated; or (c) 90 days from the Termination Date. During the period from the Termination Date through the Extended Termination Date (the "Transition Period"), Resident/Fellow will be placed on unpaid administrative leave, during which Resident/Fellow will be able to continue participating in any applicable employee and welfare benefit programs (subject to Resident/Fellow's

continued payment of any employee portion of benefit costs) but will not be entitled to receive any compensation from B—UMG.  In addition, Banner Health's malpractice insurance will not cover Resident/Fellow for any clinical services provided during the Transition Period.

5.3    Resident/Fellow's right to perform services under this Agreement may be suspended or may be otherwise restricted as outlined in the Manual.  Subject to the disciplinary action and due process provisions of the Manual, this Agreement may be terminated immediately upon the termination of Resident/Fellow's participation in the GME Program, upon the occurrence of any of the events specified in the Manual, or upon any material breach of this Agreement by Resident/Fellow.

6.    <u>Notices</u>.  Any notice required to be given pursuant to the terms and provisions of this Agreement must be in writing and may be either personally delivered or sent by registered or certified mail in the United States Postal Service, return receipt requested, postage prepaid, addressed to the receiving party at the applicable address set forth below, or to such other addresses as the parties may hereafter designate in writing, or through electronic mail:

To Resident/Fellow:  At the residential address recorded in personnel system utilized by B—UMG or the email address Resident/Fellow has on file with the GME Program

To B—UMG:  Banner–University Medical Group
1501 N. Campbell Avenue, Room 2445
Tucson, AZ  85719
Attn:   Chief Executive Officer

Any such notice will have been given when personally delivered or sent by electronic mail, or, if sent by registered or certified mail, three days after the same is sent as provided herein.

7.    <u>Integration and Amendment</u>. This Agreement, including the Manual, contains the entire agreement between the parties with respect to the subject matter hereof.  All prior negotiations between the parties are merged in this Agreement, and there are no understandings or agreements other than those incorporated herein.  This Agreement may not be modified except by written instrument signed by both parties.

8.    <u>Waiver and Breach</u>.  No waiver of the enforcement or breach of any portion of this Agreement is a waiver of any other breach or of the enforcement of any other portion of the Agreement.  No extension of time for performance is an extension of the time for any other performance.

9.    <u>Assignment</u>.  Resident/Fellow may not assign or subcontract Resident/Fellow's rights or obligations or delegate any duties under this Agreement.  Any attempt to do so without

the express prior written consent of B—UMG is null and void and gives B—UMG the right to cancel and terminate this Agreement. B—UMG may assign or otherwise transfer its interest under this Agreement to any related entity, including, without limitation, any subsidiary or affiliated organization of B—UMG. Assignment by B—UMG to a related entity does not require the consent of Resident/Fellow.

10. <u>Survival</u>. Any covenant or provision herein that requires or might require performance after the termination or expiration of this Agreement will survive any termination or expiration of this Agreement.

11. <u>Further Assurances</u>. Upon request, each of the parties will execute and deliver all documents, and do or cause to be done all such acts and things, necessary to effectuate the purpose and intent of this Agreement.

12. <u>Counterparts</u>. This Agreement may be executed in one or more copies or counterparts, each of which when signed will be an original, but all of which together will constitute one instrument. Signatures submitted via telecopy or electronic signature will have the same force and effect as original signatures and, as such, will be valid and binding upon the parties hereto.

13. <u>Governing Law</u>. This Agreement will be governed by the internal substantive law of the State of Arizona, without regard for the conflict of law principles thereof.

IN WITNESS WHEREOF, the parties have executed this Agreement, individually or by signature of their duly authorized representative, as of the signature dates set forth below, to be effective as of the Effective Date.

**B—UMG:**                                            **RESIDENT/FELLOW:**

Banner–University Medical Group

By: _____          _____
    Venkata Evani, M.D.                      Brenna Bullock, MD
    Chief Executive Officer

Date: ___3/2/2023_____          Date: _____