**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenna Bullock,<br><br>          Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>          Defendants. | No. CV-24-00520-TUC-SHR<br><br>**Order Granting Defendant's Motion to Dismiss** |

Pending before the Court is Defendant Arizona Board of Regents' (ABOR's) Motion to Dismiss Plaintiff's Injunctive Relief Claims (Doc. 23) filed pursuant to Federal Rule of Civil Procedure 12(b)(1). The Motion is fully briefed. For the reasons stated below, the Court will grant Defendant's Motion.

**I.     BACKGROUND**

Plaintiff began her residency in the University of Arizona College of Medicine's Ophthalmology Residency Program (the "Program") in July 2021. (Doc. 26 at 2–3.) Plaintiff was the only female resident in her Program year. (*Id.* at 3.) Plaintiff expected to graduate from the Program in 2025 and planned to apply for a vitreoretinal surgery fellowship. (*Id.*) In April 2023, Plaintiff began expressing concerns to faculty members about gender discrimination in the Program. (*Id.* at 4.) In June 2023, after complaining she was receiving fewer surgical opportunities than male residents, Plaintiff was placed on administrative leave and required to undergo a behavioral health evaluation. (*Id.* at 5.)

Plaintiff returned from leave and subsequently reported being subjected to retaliatory treatment and hostility. (*Id.* at 6–9.) She was again placed on administrative leave in January 2024 and required to undergo another behavioral health examination, after which she was required to attend therapy with a psychiatrist before returning to work. (*Id.* at 10–11.)

Plaintiff returned to work in April 2024. (Doc. 26 at 11.) In June, Program Director Defendant Todd Altenbernd, M.D., issued a Notice of Recommended Disciplinary Action informing Plaintiff the Program was considering her dismissal based on allegations of unprofessional conduct. (*Id.* at 12; Doc. 21-4 at 2–16.) Plaintiff appeared before the Clinical Competency Committee (CCC) and presented a statement to contest the recommended dismissal. (Doc. 26 at 13; Doc. 21-6 at 2.) On June 26, 2024, Altenbernd issued a Notice of Final Disciplinary Action dismissing Plaintiff from the Program. (Doc. 26 at 13; Doc. 21-6 at 2–6.) Plaintiff appealed to Defendant Conrad Clemens, M.D.—the Designated Institutional Officer (DIO)—asserting, among other things, Altenbernd had acted in retaliation for concerns raised by Plaintiff during her time in the Program. (Doc. 26 at 13; Doc. 27-1 at 7, 10–11.) Plaintiff asked Clemens to reverse the dismissal decision and reinstate her in the Program "subject to a six-month Performance Improvement Plan or a Probation." (Doc. 26 at 13; Doc. 27-1 at 7.) Plaintiff also asked Clemens to obtain an "advisory opinion" from the Graduate Medical Education Committee (GMEC). (Doc. 26 at 13; Doc. 27-1 at 7.) The GMEC issued an advisory opinion recommending reversal of Plaintiff's dismissal from the Program. (Doc. 26 at 14; Doc. 21-1 at 22.) On August 12, 2024, Clemens issued a decision reversing Plaintiff's dismissal, noting she had not been afforded a sufficient opportunity to remediate the deficiencies identified in the Notice and imposing the requested six-month probationary period. (Doc. 26 at 14; Doc. 21-1 at 22–24)

Plaintiff was scheduled to return to the Program on September 1, 2024. (Doc. 26 at 15.) Prior to her return, the University provided Plaintiff with the parameters of her probation. (Doc. 19-1 at 2–6.) Plaintiff rejected the terms by email and expressed concerns

about working with Defendant Altenbernd. (Doc. 26 at 14–15; Doc. 15-1 at 13–14.) On September 9, Defendant Clemens issued a second Final Decision rescinding the offer for Plaintiff to return on probation and upholding Altenbernd's dismissal decision, noting Plaintiff had "repeatedly rejected the terms of the very probation that [she] requested" and the "decision is final and is not subject to further review within the University." (Doc. 15-1 at 13–14; Doc. 26 at 16.) Plaintiff asked to appeal the decision, and Clemens denied her request. (Doc. 26 at 16.) On September 26, 2024, Plaintiff filed a Notice of Appeal for Judicial Review of Administrative Decision in Pima County Superior Court pursuant to Arizona's Administrative Review Act (ARA)—A.R.S. §§ 12-901 to 12-914—contesting the University's final administrative decision dismissing her from the Program. (Doc. 21-1 at 2.)

On October 24, 2024, Plaintiff filed a three-count Complaint in this Court. (Doc. 1 at 17–20.) In Count One, Plaintiff asserts claims of sex discrimination and retaliation under Title IX against Defendant ABOR—the governing board responsible for overseeing the University of Arizona—seeking reinstatement in the Program as well as compensatory damages. (*Id.* at 17–18.) In Count Two, Plaintiff asserts violations of 42 U.S.C. § 1983 against three Program faculty members—Defendants Altenbernd, Clemens, and Ophthalmology Department Chair Jonathan Holmes, M.D.—seeking only monetary damages. (*Id.* at 18–19.) In Count Three, Plaintiff seeks a permanent injunction against ABOR "enjoining Defendants and their officers, agents, employees, independent contractors, or other persons acting under their supervision and control or at their request from committing any discrimination or retaliation" against her. (*Id.* at 19–20.) The same day, Plaintiff moved for a temporary restraining order (TRO) and preliminary injunction, asking the Court to enjoin the University and its faculty "from imposing [her] dismissal . . . from the University's medical resident program" and "from further discriminati[ng] and retaliati[ng] against" her. (Doc. 2 at 1.) On November 5, 2024, the Court granted Plaintiff's motion and issued a TRO ordering Defendants to immediately reinstate Plaintiff in the Program without probationary status. (Doc. 13.)

Defendant ABOR subsequently moved to dissolve the TRO, arguing compliance was "impossible" because reinstatement would require the Arizona Medical Board to reissue Plaintiff's medical license and Banner-University Medical Group to rehire Plaintiff as an employee. (Doc. 15 at 3–6.) Neither Banner nor the medical board are named as defendants in Plaintiff's original Complaint. (*See* Doc. 1.) Plaintiff opposed Defendant's motion and moved for sanctions based on Defendant's failure to comply with the TRO. (Docs. 19, 20.) In response to Plaintiff's motion for sanctions, Defendant asserted Plaintiff had failed to inform the Court of her pending action in superior court seeking reversal of her dismissal from the Program. (Doc. 21 at 2, 7.) And, Defendant argued, because Plaintiff was already seeking relief in state court through the process for judicial review of an administrative decision set forth in the ARA—"'the only vehicle by which' a resident 'may test the decision of' a university's appeal committee"—the Court lacked subject-matter jurisdiction over Plaintiff's claims for injunctive relief. (*Id.* at 7 (quoting *Rosenberg v. Ariz. Bd. of Regents*, 118 Ariz. 489, 492 (1978)).)

On November 15, 2024, the Court held a hearing on Defendant's motion to dissolve. (*See* Doc. 22.) During the hearing, Plaintiff confirmed she had initiated an appeal in Pima County Superior Court seeking judicial review of the University's decision to dismiss her from the Program before filing her Complaint and request for injunctive relief in this Court. Defendant indicated its intent to file a motion to dismiss based on the Court's purported lack of jurisdiction. Based on the new information presented, the Court dissolved the TRO, set deadlines for briefing on Defendant's motion to dismiss, and scheduled a preliminary injunction hearing for January 8, 2025. (*See id.*)

On November 22, 2024, Defendant ABOR filed the instant Motion, asking the Court to dismiss Plaintiff's claims for injunctive relief in Counts One and Three "with prejudice and without leave to amend" because the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), "requires the Court to permanently abstain from exercising jurisdiction over those claims."[1] (Doc. 23 at 2, 14.) In response, Plaintiff informed the Court and

---

[1] Defendant also moved to stay Plaintiff's remaining non-injunctive claims in Counts One and Two but subsequently withdrew that motion in light of Plaintiff's

- 4 -

Defendants she had since voluntarily dismissed the action in superior court, and, as such, there was no ongoing state judicial proceeding and thus "no reason for this Court to abstain from hearing [her] claims." (Docs. 24 at 5, 24-1 at 2.) Plaintiff then filed a First Amended Complaint in this Court adding Banner as a defendant. (Doc. 26.) In Defendant ABOR's reply in support of its Motion to Dismiss, it asserted the *Younger* doctrine is still applicable despite Plaintiff's dismissal of the state-court action, and, in any event, Plaintiff's claims for injunctive relief must now be dismissed based on res judicata. (Doc. 27 at 4, 8–12.)

The Court subsequently held a status conference to discuss, among other things, the possibility of an early settlement conference. (Doc. 31.) The parties agreed to participate in a settlement conference before Magistrate Judge Michael A. Ambri but were ultimately unable to reach a settlement. (*See* Doc. 37.) As such, the Court ordered Plaintiff to file a supplemental response to Defendant's Motion to Dismiss addressing "this Court's authority to hear and decide Plaintiff's claims for injunctive relief in light of Plaintiff's voluntary dismissal of the state-court proceeding and filing of the First Amended Complaint, including whether the *Younger* abstention doctrine is applicable given the current procedural posture of this case and whether res judicata requires dismissal." (Doc. 33.) The Court permitted Defendant to file a supplemental reply. (*Id.*) The additional briefing is now before the Court.

## II.   LEGAL STANDARD[2]

### A. Res Judicata

Although Defendant does not cite Rule 12(b)(6) in arguing for dismissal on res judicata grounds, the Court construes Defendant's Motion under this rule rather than under Rule 12(b)(1). *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (preclusion doctrine of res judicata is not jurisdictional in nature and thus is not properly raised in a motion to dismiss under Rule 12(b)(1)); *Scott v. Kuhlmann*, 746 F.2d

---

abandonment of the state-court appeal. (Doc. 23 at 2, 14; Doc. 27 at 2.)

[2] Although the Motion to Dismiss was initially brought under Rule 12(b)(1) and based on *Younger* abstention alone, Plaintiff's collateral actions in state court changed the procedural posture of this case before briefing had been completed. Thus, at this juncture, the Court will construe the Motion as one primarily based on res judicata under Rule 12(b)(6).

1377, 1378 (9th Cir. 1984) (per curiam) (affirmative defense of res judicata may be raised in motion to dismiss under Rule 12(b)(6) "when, as here, the defense raises no disputed issues of fact"); *Simmonds v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1087 n.6 (9th Cir. 2011) (construing motion to dismiss filed under Rule 12(b)(1) as one for dismissal under 12(b)(6)), *vacated and remanded on other grounds*, 566 U.S. 221, 221 (2012).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, dismissal under this rule is appropriate when there is: (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In analyzing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

### B. *Younger* Abstention

Defendant characterizes its original Motion on *Younger* grounds as one for dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1). "Federal Rule of Civil Procedure 12(b)(1) allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Federal courts are courts of limited jurisdiction and can only hear those cases authorized by the Constitution and by statute—namely, cases involving diversity of citizenship, a federal question, or cases to which the United States is a party. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Despite Defendant's characterization of its Motion, Defendant's argument is that the Court should abstain from exercising its jurisdiction pursuant to the doctrine set forth in *Younger*, not that the Court lacks jurisdiction to hear claims under 42 U.S.C. § 1983 and Title IX. "*Younger* abstention remains an extraordinary and narrow exception to the

general rule" obligating federal courts to decide federal questions presented to them. *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *Cook v. Harding*, 879 F.3d 1035, 1038 (9th Cir. 2018)).  Although the Ninth Circuit has recognized "a dismissal due to *Younger* abstention [is] similar to a dismissal under Rule 12(b)(1)," *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016), "there is debate about whether invoking abstention is a challenge to federal jurisdiction," which typically "matters because the party bearing the burden may differ depending on how the challenge is categorized," *Tinsley v. McKay*, 156 F. Supp. 3d 1024, 1029–30 (D. Ariz. 2015) (collecting cases in which both the Ninth Circuit and the Supreme Court have "alternatively described abstention as jurisdictional and not jurisdictional").  Nevertheless, determining which party bears the burden of proof here is "unnecessary because the result is the same even assuming the burden of proof rests solely with Plaintiff[]." *Id.* at 1030.

### III.   DISCUSSION

Defendant argues Plaintiff's voluntary dismissal of the state-court action renders her dismissal from the Program final under the ARA, and "res judicata now . . . bars her injunctive claims."[3]  (Doc. 27 at 8; Doc. 48 at 1.)  Additionally, Defendant maintains *Younger* abstention bars Plaintiff's claims for injunctive relief despite her dismissal of the state-court action.  (Doc. 27 at 4; Doc. 48 at 2.)  Plaintiff counters the ARA does not apply to her claims for injunctive relief, and, even assuming the ARA could bar injunctive relief related to her Title IX claims, the administrative record of the University's proceedings is not currently before the Court and its absence precludes the Court from conducting the required fairness analysis set forth in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966).  (Doc. 47 at 6.)  Finally, Plaintiff asserts, in any event, her dismissal from the Program "failed to meet requisite fairness standards to trigger any preclusive effect." (*Id.* at 8.)  Plaintiff does not respond to Defendant's *Younger* argument.  The Court

---

[3] Plaintiff contends Defendant waived this argument by failing to sufficiently raise it in its Motion to Dismiss filed on November 22. (Doc. 24 at 7.)  But, at the time Defendant filed its Motion, Plaintiff had not yet moved to voluntarily dismiss the state-court action. (Doc. 27-1 at 2.)  Under these circumstances, Defendant did not waive its res judicata argument.

- 7 -

1  will grant Defendant's Motion to Dismiss Plaintiff's claims for injunctive relief on both
2  res judicata and *Younger* abstention grounds.

### A. Res Judicata

"When a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when the parties have had an adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect to which it would be entitled in that state's courts." *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999); *see Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032–33 (9th Cir. 1994) (concluding state administrative decision may rise to the level of a judicial proceeding entitled to preclusive effect under *Utah Construction*); *see also* 28 U.S.C. § 1738 (state judicial proceedings entitled to full faith and credit). "First, however, the federal district court must independently assess the adequacy of the state's administrative forum." *Olson*, 188 F.3d at 1086. "The threshold inquiry . . . is whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment." *Id.* (quoting *Miller*, 39 F.3d at 1033) (alteration in *Olson*). "This requires careful review of the administrative record to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions." *Id.* (quoting *Miller*, 39 F.3d at 1033). "[A]lthough a federal court should ordinarily give preclusive effect when the state court would do so, there may be occasions where a state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down in *Utah Construction*." *Id.* (quoting *Miller*, 39 F.3d at 1033) (alteration in *Olson*).

Under Arizona law, "[u]nless review is sought of an administrative decision within the time and in the manner provided in [the ARA], the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of the decision." § 12-902(B). As such, "a party's failure to appeal a final administrative decision makes that decision final and res judicata." *Olson*, 188 F.3d at 1086. The doctrine of res judicata "binds the same party standing in the same capacity in subsequent litigation on the same

1  cause of action, not only upon facts actually litigated but also upon those points that might
2  have been litigated." *Id.* "In Arizona, the failure to seek judicial review of an
3  administrative order precludes collateral attack of the order in a separate complaint. If no
4  timely appeal is taken, the decision of the [administrative agency] is 'conclusively
5  presumed to be just, reasonable and lawful.'" *Id.* (quoting *Gilbert v. Bd. of Med. Exam'rs*,
6  155 Ariz. 169, 173 (1987)). "This principle applies even to alleged constitutional errors
7  that might have been corrected on proper application to the court which has jurisdiction of
8  the appeal." *Id.*; *see Gilbert*, 155 Ariz. at 174 (holding an assertion of irregularity in the
9  proceedings before the Board of Medical Examiners—that the board members were
10 conspiring against him and were motivated to act for reasons other than protection of the
11 public—could have been raised before the board and on appeal of the board decision to the
12 superior court).

13       The Court first addresses Plaintiff's contention the ARA does not apply to her
14 claims for injunctive relief under Title IX. (Doc. 47 at 2–5.) Plaintiff asserts the scope of
15 the superior court's review under the ARA is limited to determining whether the
16 administrative process complied with "notions of due process and fairness" and does not
17 include review of her discrimination and retaliation claims. (*Id.* at 3.) Additionally,
18 Plaintiff argues her dismissal from the Program is not an "administrative decision" as
19 defined in § 12-901(2) because it is not a result of a "disciplinary proceeding" and therefore
20 does not affect her "legal rights, duties or privileges." (*Id.* at 2–4.) And, Plaintiff contends,
21 her voluntarily dismissed appeal in superior court could not have provided the relief sought
22 because Defendant Banner, which "has joint control over the residency program," is not
23 subject to the ARA. (*Id.* at 5.)

24       Contrary to Plaintiff's assertion, the scope of the superior court's review under the
25 ARA includes all factual and legal matters at issue in the agency decision. *See* § 12-910(F)
26 (superior court shall decide all questions of law, including interpretation of constitutional
27 and statutory provisions, and questions of fact at issue regarding the decision); § 12-905(A)
28 (jurisdiction vested in the superior court); *see also Ernst v. Ariz. Bd. of Regents*, 119 Ariz.

- 9 -

129, 131 (1978) ("The Arizona Board of Regents is an agency subject to Arizona's Administrative Review Act."). Indeed, Plaintiff raised claims of discrimination and retaliation in her state-court appeal before filing the notice of voluntary dismissal. (Doc. 21-1 at 2–11, 16.) Further, Plaintiff's contention her dismissal from the Program was not disciplinary is belied by the record. (*See* Doc. 26 at 14, 15; Doc. 21-2 at 20–24.) And, as Defendant argues, there is "no legal basis for [Plaintiff's] contention that she was prohibited from seeking relief against Banner in connection with her state court appeal." (Doc. 48 at 6–7.) Plaintiff's argument the ARA does not apply to her claims for injunctive relief under Title IX fails.

Having found the ARA applies to Plaintiff's claims, the Court will address whether the University's administrative process satisfies the *Utah Construction* fairness requirements.[4] *See* 384 U.S. at 422. The fairness requirements set forth in *Utah Construction* are: (1) the administrative agency acts in a judicial capacity; (2) the agency resolves disputed issues of fact properly before it; and (3) the parties have an adequate opportunity to litigate. *Miller*, 39 F.3d at 1033. Defendant asserts the first two *Utah Construction* requirements are satisfied here, where the University "acted in a judicial capacity when the Program conducted the disciplinary proceedings that resulted in Plaintiff's dismissal" and "resolved disputed issues of fact properly before it." (Doc. 27 at 9.) Plaintiff responds Defendant has not submitted "any administrative record for the Court's review," and therefore the Court cannot determine if the University resolved disputed issues of fact. (Doc. 47 at 8.) Additionally, Plaintiff argues Defendant Clemens was not acting in a judicial capacity because "there is nothing in the record that the final decision could be appealed either administratively or to state court." (*Id.* at 8–9.)

The University acted in a judicial capacity by resolving disputed issues of fact and law properly before it, including whether the meeting before the CCC complied with due

---
[4] Plaintiff asserts the University's administrative process did not meet the "requisite fairness requirements" set forth in *Utah Construction* while also conceding this case "does not involve a challenge to the fairness of the University's administrative hearing process." (Doc. 48 at 2, 3, 7.) The Court will nevertheless address whether the fairness requirements have been satisfied.

- 10 -

process requirements and whether the University's dismissal decision was retaliatory in nature. (*See* Doc. 27-1 at 9–11; Doc. 21-1 at 22–24.) Moreover, both Plaintiff and Defendant have attached documents comprising the administrative record to their filings in this Court. Plaintiff does not dispute the authenticity of the documents attached to Defendant's filings. As such, the Court will take judicial notice of the following documents in determining whether Plaintiff's claims for injunctive relief are precluded by res judicata: Docs. 15-1, 19-1, 19-2, 19-3, 19-9, 21-1, 21-2, 21-3, 21-4, 21-5, 21-6, 27-1.[5]

As to the third *Utah Construction* factor—whether Plaintiff had an "adequate opportunity to litigate"—Defendant contends the Court must presume the University's administrative hearing process was adequate because Plaintiff voluntarily dismissed her appeal in superior court. (Doc. 48 at 7.) In support of its argument, Defendant cites *Quade v. Arizona Board of Regents*, 700 F. App'x 623 (9th Cir. 2017).[6] There, Arizona State University suspended the plaintiff for violating the student code of conduct. *Id.* at 624. The plaintiff appealed by requesting a hearing before a university hearing board, but, after arriving at the scheduled hearing, decided not to participate based on alleged constitutional violations. *Id.* at 624, 626. The plaintiff did not seek judicial review of the university's final suspension decision in state court through the process set forth in the ARA. *Id.* The plaintiff sued the Arizona Board of Regents in federal court, and, upon the defendants' motion to dismiss, the district court dismissed the plaintiff's federal due process and gender discrimination claims on the basis of res judicata. *Id.* at 624. On appeal, the Ninth Circuit held the "university's allegedly unfair decision is now final" and the plaintiff's federal

---

[5] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (on motion to dismiss, court may consider documents the authenticity of which is not contested and upon which the plaintiff's complaint necessarily relies); *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (court may take judicial notice of records and reports of state administrative bodies), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice on motion to dismiss of records in other case to determine if issues were actually litigated in previous action); *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) (taking judicial notice of filings from previous action to help court consider "matters related to preclusion in the state courts" on motion to dismiss).

[6] Although unpublished and therefore not precedential, the Court finds the logic in *Quade* persuasive. *See* 9th Cir. R. 36-3; Fed. R. App. P. 32.1.

- 11 -

claims were barred "because [he] took no steps to have the Board's decision corrected through the university's rehearing process or in state court." *Id.* at 626. As such, the Ninth Circuit concluded the district court had properly dismissed the plaintiff's due process claim on the basis of res judicata. *Id.*

Here, Plaintiff asserts Defendant Clemens, in issuing the final order of dismissal, "did not have the authority or ability to consider evidence and legal requirements, much less make any legal findings, award damages, or address the legal claims in any way" and therefore she was not given an adequate opportunity to litigate. (Doc. 47 at 9.) But Plaintiff does not meaningfully dispute she had an opportunity to, and did, in fact, raise her discrimination and retaliation claims in both her appeal to DIO Clemens and her appeal to the state superior court. *See Quade*, 700 F. App'x at 625; *Misischia v. Pirie*, 60 F.3d 626, 630 (9th Cir. 1995) (concluding the plaintiff "had an opportunity, which he chose not to take, for judicial review, and even for the presentation of evidence in the reviewing court to demonstrate procedural irregularities by the board"); *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988) ("If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing [the] right to appeal." (quoting *Plaine v. McCabe*, 797 F.2d 713, 719 n.12 (9th Cir. 1986)) (alteration in *Eilrich*)); *see also United States v. Arevalo*, 408 F.3d 1233, 1236 (9th Cir. 2005) (noting voluntary dismissal of a timely filed appeal places the appellant in the same position as if he had never filed a notice of appeal). "In addition to review by the state superior court, [A.R.S. §] 12-913 provides for direct appellate review by the Arizona Supreme Court of any superior court decision arising from an action for review of an administrative agency decision." *Quade*, 700 F. App'x at 625. Thus, given the available judicial review provided for under Arizona law, the state forum as a whole provided Plaintiff an adequate opportunity to litigate her claims for injunctive relief. *See id.*

### B. *Younger* Abstention

Even if the Court decided not to resolve Plaintiff's claims for injunctive relief primarily on res judicata grounds, the Court would still dismiss the claims with prejudice

based on *Younger* abstention. Despite Plaintiff's attempt to fix the *Younger* problem by voluntarily dismissing her state-court action, Defendant argues *Younger* still applies because the relevant timeframe is when the federal complaint is filed. (Doc. 27 at 4; Doc. 48 at 2.) The Court agrees. "The critical question is not whether the state proceedings are still 'ongoing,' but whether 'the state proceedings were underway before initiation of the federal proceedings." *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987) (quoting *Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*, 805 F.2d 1353, 1358 (9th Cir. 1986)). Plaintiff filed her state-court action on September 26, 2024, before filing her Complaint in this Court on October 24. (Doc. 21-1 at 2; Doc. 1 at 1.) As such, Plaintiff's dismissal of the state-court action does not render *Younger* inapplicable. Moreover, even if Plaintiff were to now dismiss her claims for injunctive relief in this Court and subsequently file a new federal complaint asserting the same claims, as discussed above, res judicata would preclude Plaintiff from challenging the administrative decision anew in federal court. Therefore, the Court can independently dismiss with prejudice Plaintiff's claims for injunctive relief under *Younger*, and any further requests for injunctive relief would be futile based on the foregoing res judicata analysis.

### IV. CONCLUSION

**IT IS ORDERED** Defendant's Motion to Dismiss (Doc. 23) is **GRANTED.**

**IT IS FURTHER ORDERED** Plaintiff's claims for injunctive relief as set forth in the First Amended Complaint (Doc. 26) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** Plaintiff's application for preliminary injunction is **DENIED**, and the related hearing scheduled for Thursday, February 13, 2025, is **VACATED**.

**IT IS FURTHER ORDERED** denying Plaintiff's "Motion for Simultaneous Briefing and To Add Banner to the Preliminary Injunction Hearing" (Doc. 52) as moot.

Dated this 23rd day of January, 2025.

Honorable Scott H. Rash
United States District Judge